## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FRANCIS ANDERSON,

                Plaintiff,

v.

THOMAS KOCIENDA, *et. al.*,

                Defendants.

Civil No. 3:24-cv-1437 (MPS)

## INITIAL REVIEW ORDER AND ORDER ON REQUEST FOR INJUNCTIVE RELIEF

On September 6, 2024, Plaintiff Francis Anderson filed this action while housed as a sentenced inmate in the custody of the Department of Correction ("DOC") at Cheshire Correctional Institution ("Cheshire").[1] In his complaint, he seeks declaratory and injunctive relief against DOC Commissioner Quiros, DOC "ADA Operations" Colleen Gallagher, and DOC Mental Health staff members, Thomas Kocienda and Kelly Wolf. Compl., ECF No. 1

On September 18, 2024, the Court issued an order to permit Plaintiff to proceed in this action with *in forma pauperis* status despite being subject to the three strikes provision under 28 U.S.C. § 1915(g) because his complaint suggested he fell within that section's "imminent danger

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website shows that Plaintiff was sentenced to three years of incarceration on July 19, 2024 and that he is still housed at Cheshire. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=139042.

exception." Order, ECF No. 11; *see Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) ("[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint—in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed."). The Court ordered Defendants to show cause why Plaintiff's request for relief—seeking an injunction against the "harsh, degrading" conditions the defendants are allegedly imposing on the Plaintiff—should not be granted. Order, ECF No. 11 at 3.

## I.    BACKGROUND

Plaintiff's complaint states that he has a diagnosis of Post Traumatic Stress Disorder ("PTSD") but has not received appropriate mental health treatment after his attempts to commit suicide. Compl., ECF No. 1, at 5-6. According to his complaint, Plaintiff's mental health has deteriorated as a result of his being subjected harsh, degrading treatment rather than being provided with mental health interventions after each suicide attempt. *Id.* at 5. Plaintiff seeks a declaratory judgment that Defendants are violating his constitutional rights and injunctive relief to enjoin defendants from subjecting him to the harsh and degrading treatment rather than appropriate mental health intervention. *Id.* at 5-6.

On October 3, 2024, Plaintiff filed an Emergency Motion in which he asserts that: he has "a serious mental illness [that] goes undiagnosed by defendants[;]" he "has received years of treatment in the community and mental hospitals and other mental health institutions for mental illness (P.T.S.D.) and has been on powerful psychotropic drugs and received treatment[;]" and "defendants nevertheless deemed [him] malingering and manipulating" and fail to provide him

with mental health treatment. Emerg. Motion at 1-2, ECF No. 16.[2] Plaintiff explains that he is

being denied his "psychotropic drugs" and he is engaging in suicide attempts or self-mutilation.

*Id.* at 2. He claims that if he is "feeling suicidal," he is stripped naked, tied down in four point

restraints, and placed on Behavioral Observation status ["BOS"] without "hygiene cleanliness

items for weeks[.]" *Id.* at 2. He states that his last self-mutilation was on September 26, 2024,

after the nurse denied him his "powerful psychotropic drugs." *Id.* at 2.

Defendants have filed an objection to Plaintiff's request for injunctive relief. Defs.' Obj.,

ECF No. 20. Plaintiff has filed three Notices in response to Defendants' objection. Notices, ECF

Nos. 22, 23, 24.[3]

I.    **Standard of Review**

---

[2] Plaintiff attached a two-page unsigned document titled "Complaint with Jury Demand." ECF No. 16-1. This document asserts a list of federal statutory and constitutional violations with spaces for a litigant to fill in his or her name. It appears to be a portion of draft sample of a federal civil rights complaint. In any event, this document does not provide any support for Plaintiff's claims of Eighth Amendment indifference or his request for injunctive relief.

[3] Plaintiff has also filed a motion to show cause that requests Defendants to show why they should not be enjoined from "forcing Plaintiff on (BOS) behavioral observation status after every suicide attempt[.]" Mot. to Show Cause at 2-3, ECF No. 21. The Court notes that Plaintiff complains that Defendants are not following the prison administrative directive for suicide prevention. *See id.* at 2. But a violation of prison directives does not generally support a claim under 42 U.S.C. § 1983 as such directives "do not confer any constitutionally protected rights on inmates." *Riddick v. Chevalier*, No. 11-cv-1555 (SRU), 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013) ("State prison directives do not confer any constitutionally protected rights on inmates ... and Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives."); *see Sandin v. Conner,* 515 U.S. 472, 481–82 (1995) (noting prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates).

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

## II.    DISCUSSION

### A.    Initial Review

The Court briefly addresses whether Plaintiff's complaint satisfies review under 28 U.S.C. § 1915A. Plaintiff claims Eighth Amendment and Fourteenth Amendment violations arising from deliberate indifference to his serious mental health needs. Compl. at 6; *see also* Emerg. Mot. at 1-2.

Plaintiff is a sentenced prisoner and therefore his conditions of confinement are governed by the specific constitutional provisions of the Eighth Amendment rather than the Fourteenth Amendment Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017). Thus, any claims concerning indifference to his mental health needs under the Fourteenth Amendment must be dismissed.

The Eighth Amendment protects sentenced prisoners from "cruel and unusual punishment" at the hands of prison officials. *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). As relevant here, the Eighth Amendment forbids deliberate

indifference to prisoners' serious medical needs. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137-38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000). In determining whether *Ex Parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

5

Unlike an individual capacity claim for monetary damages under section 1983, personal involvement in the alleged constitutional violation is not a prerequisite to official capacity claims for injunctive relief. *See Hamilton v. Deputy Warden*, 2016 WL 6068196, at *13 (S.D.N.Y. Oct. 13, 2016). However, a claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

On its face, the complaint sufficiently suggests that Plaintiff is subject to ongoing Eighth Amendment deliberate indifference to his mental health needs.

However, Plaintiff's request for a declaratory judgment that Defendants' conduct has violated his constitutional rights is barred because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 71 (1985). In addition, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (citation, alterations, and ellipsis omitted). A judgment in his favor on his Eighth Amendment claims would serve the same purpose as a declaration that the conditions were unconstitutional. Plaintiff's request for declaratory relief is not distinct from the injunctive relief sought in his section 1983 claims and is dismissed.

Thus, the Court turns next to consideration of whether Plaintiff's request for injunctive relief should be granted.

**B.    Injunctive Request**

Defendants argue that Plaintiff is receiving appropriate mental health treatment and the Court should rescind Plaintiff's *in forma pauperis* status. Defs.' Obj., ECF No. 20. Defendants have submitted a declaration, medical records, and other materials in support of their objection.[4]

A district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.). The same standard applies for granting a temporary restraining order and a motion for a preliminary injunction. *Stoneway Capital Corp. v. Siemens Energy Inc.*, 2020 WL 764457, at *1 (S.D.N.Y. Feb. 14, 2020).

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.) (citation and internal quotation marks omitted). A movant must establish "a threat of irreparable harm" and either (1) "a probability of success on the merits" or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citations omitted). To demonstrate irreparable harm, a plaintiff must show "an injury that is neither remote nor speculative, but actual and imminent and

---

[4] Defendants initially argued in addition that the request for injunctive relief was moot because the plaintiff was transferred to another facility.  But after the plaintiff was transferred back to Cheshire, the defendants withdrew this argument.  *See* ECF No. 26.

that cannot be remedied by an award of money damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995).

"To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Vega v. Lantz*, 2006 WL 2642416, at *2 (D. Conn. Sept. 14, 2006) (internal citations omitted); *see also Taylor v. Rowland*, 2004 WL 231453, at *2–*3 (D. Conn. Feb. 2, 2004) (concluding that a motion for preliminary injunctive relief was not proper because it was "unrelated to the issues in the amended complaint"). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a).

Plaintiff has submitted no evidence to support his claim that mental health staff are not "properly trained in the identification and management of mentally ill prisoners" Compl. at 5; Notice at 2, ECF No. 23. By contrast, Defendants have submitted substantial evidence to support their position. They have provided Dr. Wolf's declaration, which reflects that she has been licensed as a psychologist in Connecticut since 2015 and has worked at Cheshire as the Supervising Psychologist for the past four years. Wolf decl. at ¶¶ 2-4, ECF No. 20—2. She avers that her clinical staff consists of either licensed professional counselors ("LPCs") or clinical

social workers ("CSW") who are trained and qualified to assess and treat numerous mental health conditions, including PTSD. *Id.* at ¶ 6.

Dr. Wolf explains that Plaintiff has diagnoses of Antisocial Personal Disorder and borderline Personality Disorder, and—while at Cheshire—had a mental health score of 3, assigned to inmates whose mental health conditions that can be managed on an "outpatient" basis. *Id.* at ¶¶ 7-8. Dr. Wolf notes that Plaintiff received psychotherapy and was also provided with medication management by Psychiatric APRN Burns, although he was not fully compliant with the medication regimen prescribed by APRN Burns. *Id.* at ¶ 9.

She declares that the BOS intervention is directed at "extinguishing" "maladaptive" behavior and keeping the inmate safe; thus, an inmate who expresses intention to self-harm or has engaged in self-harm will be placed on BOS with a safety gown and all items that could be used for self-harm—such as clothing and sheets—will be removed. *Id.* at ¶¶ 11-12. She notes that BOS inmates are monitored with fifteen minute tours and are not placed on any type of restraints. *Id.* at ¶ 13.

Dr. Wolf's declaration also outlines Plaintiff's recent BOS placements at Cheshire. On August 6 and September 30 2024, Plaintiff was placed on BOS after he lacerated his own forearm. *Id.* at ¶ 14, 16. She explains that Plaintiff was released from the BOS after he demonstrated that he no longer intended self-harm or she assessed his BOS as not clinically necessary. *Id.* at ¶¶ 15-16.[5] Dr. Wolf avers that she does not consider Plaintiff's self-harming behavior to cut himself as suicide attempts, but rather considers such behavior as consistent with

---

[5] He remained on BOS from August 6 to August 13, 2024, and from September 30 to October 1, 2024. *Id.*

9

Case 3:24-cv-01437-MPS    Document 29    Filed 11/07/24    Page 10 of 14


his "characterological pathology" to use "threats, and self-injuries, for secondary gain." *Id.* at ¶
17. Medical entries in the medical records for August 7, 2024 (noting Plaintiff reported that
custody staff did not make call to medical in timely manner so he had to cut his arm to relieve
stress), August 9, 2024 (noting Plaintiff responded he had cut himself because mental health
medications stopped), and September 7, 2024 ("inmate verbally escalated telling staff to get
ready as he will be cutting and 'going wild,' once inmate was told … that [mental health] referral
will be sent and he will be seen by [mental health] today, inmate de-escalated and calmly
apologized") appear to support Dr. Wolf's assessment about Plaintiff's self-harming behavior.
*See* Medical Record at 30, 114, 133.

The Court has reviewed the submitted medical records relevant to Plaintiff's recent
incarceration at Cheshire, which show that Plaintiff was seen regularly by Cheshire mental health
staff, including Dr. Wolf, for his mental health issues, including his self-harming behavior.
Medical Record, ECF No. 20-3.

Plaintiff has submitted his application dated February 17, 2023, for a hearing to the
Psychiatric Security Review Board ("PSRB") (dated February 17, 2023), a portion of the
transcript from his March 24, 2023 hearing before the PSRB,[6] the PSRB Memorandum of
Decision, and a corrected memorandum dated November 15, 2023, ordering that Plaintiff be
confined under maximum security condition sat Whiting Forensic Hospital "understanding that

---

[6] Plaintiff submits what appears to be the same transcript portion from his March PSRB hearing with his Notice,
ECF No. 22.

his confinement within the [DOC] will not end before his commitment to the Board expires on

November 17, 2023." Mot. to Show Cause, ECF No. 15-1.[7] Plaintiff submits a memorandum and

supplemental brief in opposition to a motion to dismiss filed in his administrative appeal of the

PSRB decision (HHBcv23-6081759-S).[8] *See id.* at 25; Notice, ECF No. 24. Plaintiff also

provides documents relevant to his disciplinary violations under prison directives due to his self-

mutilation in April and August 2024. Compl. at 9-14; Mot. to Show Cause at 13-20, ECF No. 16;

Mot. to Show Cause at 9-10, 12-18, ECF No. 21; Notice at 3-11, ECF No. 23.

Plaintiff's exhibits show that he is an individual with serious mental health conditions

who is seeking to be confined at Whiting. But this case is not about whether Plaintiff should be

confined at Whiting. None of Plaintiff's evidence supports an inference that Plaintiff's mental

health needs are being ignored or that he is being treated harshly after his self-harming conduct

during his confinement at Cheshire within DOC custody. Nothing in the medical records

suggests that his needs are not being addressed. *See* Medical Record, ECF No. 20-3. Nor does

Plaintiff's evidence show that he received any harsh or degrading sanctions as a result of his

disciplinary reports for self-mutilation. Indeed, Defendants have submitted Plaintiff's

---

[7] The application represented the following. On February 7, 2014, Plaintiff was determined to have psychiatric disability requiring confinement with "a maximum security setting" and was thereafter confined at Whiting from August 15, 202 until August 15, 2014, when he was transferred to DOC. *Id.* at 2-3. In September 2016, Plaintiff was sentenced to seven years of incarceration and remained in DOC custody as a sentenced inmate until expiration of his sentence. *Id.* at 3. Thereafter, he remained incarcerated within DOC as a pretrial detainee for two criminal actions. *Id.* Plaintiff remained committed to the jurisdiction of the PSRB until November 17, 2023. *Id.* at 4. In 2015, the Connecticut Supreme Court determined Plaintiff to be an insanity acquittee entitled to the care and treatment under maximum security condition with a statutory right to treatment at Whiting Forensic Hospital. *Id.* at 4 (citing *State v. Anderson*, 319 Conn. 288, 312-314 (2015).

[8] https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHBCV236081759S.

Disciplinary History indicating Plaintiff's charges for self-mutilation issued in August and on September 30, 2024 were dismissed. Disciplinary History, ECF No. 20-4.[9]

Plaintiff's complaint about being denied his "powerful psychotropic" or his placement on BOS reflects his disagreement with the treatment decisions of Cheshire's mental health staff. But an inmate's disagreement with medical professional's treatment decisions is generally not a basis for an Eighth Amendment claim. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Thus, the Court cannot conclude that the current record supports the plaintiff's claim that he is under a threat of any imminent danger due to deliberate indifference to his mental health needs or lack of appropriate mental health treatment for his self-harming behavior. *See* Medical Record, ECF No. 20-3. It reflects that Plaintiff received medical and mental health treatment after he made self-harming lacerations. Thus, the present record fails to suggest very "serious damage" will occur if the Court does not grant his injunctive request. In addition, the medical records strongly indicate that Plaintiff is not likely to prevail on the merits of his Eighth Amendment deliberate indifference claim. Accordingly, the Court determines at this juncture that Plaintiff's request for injunctive relief must be denied.

## C.    *In forma Pauperis* Status

Defendants request the Court to rescind its grant of *in forma pauperis* status to Plaintiff based on the "imminent danger of serious physical injury" exception to three strikes provision of section 1915(g). The Court "may reexamine a provisional determination that a complainant is in

---

[9] Defendants have not submitted a declaration or affidavit to authenticate this exhibit.

'imminent danger of serious physical injury' when, after being served with the complaint, a defendant challenges that determination." *Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) ("upon challenge by a defendant – may conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger."). But the "narrow evidentiary challenge to a provisional determination that a prisoner is in imminent danger of serious physical injury should not metastasize into 'a full-scale merits review.'" *Id.* (citing *Taylor v. Watkins*, 623 F.3d 483, 486 (7th Cir. 2010).

Here, the present record shows that Plaintiff received mental health treatment and that his self-harming behavior was being addressed by Cheshire's professional mental health staff at the time he filed this action. The Court discerns no inference that Plaintiff was in imminent danger of serious physical injury arising from any harsh, degrading treatment or mental health deprivation violating the Eighth Amendment at the time he filed this action, or during any prior or subsequent period of time during his Cheshire incarceration. Thus, the Court will rescind its grant of *in forma pauperis* status.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's request for injunctive relief. The Court DISMISSES the Complaint as Plaintiff's request for injunctive relief is denied and he has not otherwise stated a plausible claim for official capacity relief.

The Court VACATES its ORDER granting Plaintiff's motion to proceed *in forma pauperis* [**ECF No. 11**]. The Court affords Plaintiff an opportunity to file an amended complaint if he believes in good faith that he can state a plausible claim of ongoing Eighth Amendment

violation at his current facility. Plaintiff must pay the Court's filing fee within thirty days of this

Order. If Plaintiff does not pay the filing fee, the Court will dismiss this action without prejudice.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 7th day of November 2024, at Hartford, Connecticut.

14